UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 24-60516-CIV-WPD

AMANDA PEREZ and
MICHAEL GREGORIO,

    Plaintiffs,

v.

THE SCOTTS COMPANY LLC
and WALMART INC.,

    Defendants.
_____

### ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT

THIS CAUSE is before the Court upon Defendants the Scotts Company LLC ("Scotts") and Walmart, Inc. ("Walmart") (collectively, "Defendants")'s Motion to Dismiss First Amended Class Action Complaint (the "Motion") [DE 29]. The Court has carefully considered the Motion, Plaintiffs Amanda Perez ("Perez") and Michael Gregorio ("Gregorio") (collectively, "Plaintiffs")'s Response in Opposition [DE 32], and Defendants' Reply [DE 34]. The Court held a hearing on the Motion on November 12, 2024. *See* [DE 47]. The Court is otherwise fully advised in the premises.

### I.    BACKGROUND

Plaintiffs filed a Class Action Complaint against Defendants on April 2, 2024. [DE 1]. Plaintiffs alleged jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (2005), which explicitly provides for the original jurisdiction of the

1

Federal Courts of any class action in which any member of the plaintiff class is a citizen of a state different from any Defendant, and in which the matter in controversy exceeds in the aggregate the sum of $5,000,000.00, exclusive of interest and costs. *See* [DE 1] at ¶1. Plaintiffs alleged claims for violations of the Florida Deceptive and Unfair Trade Practices Act, Sections 501.201 to 501.213, Fla. Stat. ("FDUTPA") against each Defendant based upon alleged misrepresentations in the advertising and labeling of the product Orthene fire ant killer1. *See generally* [DE 1]. Defendants moved to dismiss the Complaint for lack of standing and failure to state a claim; Plaintiffs responded by filing a First Amended Class Action Complaint, the operative pleading. *See* [DE's 19, 23].

In the First Amended Class Action Complaint ("FAC"), Plaintiffs allege a FDUTPA claim against each Defendant for allegedly deceptive, false and misleading representations regarding the product Orthene fire ant killer1 (the "Product"), which is manufactured and marketed by Defendant Scotts and sold to consumers by Defendant Walmart. *See* [DE 23]. In particular, Plaintiffs allege that (1) the representations contained on the Product cause reasonable consumers of the Product to believe that the Product, when used by itself, "KILLS THE QUEEN & DESTROYS THE MOUND," when in fact the Product, used by itself, does not "KILL[] THE QUEEN & DESTROY[] THE MOUND" and (2) the Product was deceptively marketed and labeled because the Product represented that it "TREATS UP TO 162 MOUNDS" when in fact the Product cannot do so because the Product contains approximately 13% less than 162 times the minimum treatment amount (1 teaspoon) stated on the Product label's instructions. *See* [DE 23]. Plaintiffs seek actual damages for the reduction in the amount of the Product they allegedly did not receive. *Id.* at ¶¶ 131, 148 (prayer for relief clauses). Plaintiffs also seek injunctive relief

to enjoin Defendants from the alleged wrongful acts and practices, and for restitution and disgorgement. ¶¶ 130, 137.

Defendants have moved to dismiss the FAC in its entirety with prejudice pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) for lack of Article III standing and for failure to state a claim, respectively.

## II.  LEGAL STANDARD

### A. Article III Standing

Federal courts are courts of limited jurisdiction and therefore have an obligation to inquire into their subject matter jurisdiction. *See Kirkland v. Midland Mortg. Co.*, 243 F.3d 1277, 1279–80 (11th Cir. 2001). Article III standing is a jurisdictional question. *See JW v. Birmingham Bd. of Educ.*, 904 F.3d 1248, 1264 (11th Cir. 2018) ("Article III standing is a prerequisite to a federal court's exercise of subject-matter jurisdiction.").

> Article III vests the judicial power in the federal courts and extends that power to "Cases" and "Controversies." U.S. Const. art. III, §§ 1–2. One tool for determining that the matters before us are truly cases or controversies, as understood by Article III, is the doctrine of standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). "The law of Article III standing ... serves to prevent the judicial process from being used to usurp the powers of the political branches." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013).

*Salcedo v. Hanna*, 936 F.3d 1162, 1166 (11th Cir. 2019).

For the Court to have subject matter jurisdiction, Plaintiffs must have Article III standing. *See, e.g.*, *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2200–08 (2021). Since the issue of Article III standing implicates subject matter jurisdiction, it "'accordingly must be addressed as a threshold matter' prior to the merits of its underlying claims." *Palm Beach Golf Ctr.-Boca, Inc.*

*v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1250 (11th Cir. 2015) (quoting *Nat'l Parks Conservation Ass'n v. Norton*, 324 F.3d 1229, 1242 (11th Cir. 2003)); *Corbett v. Transp. Sec. Admin.*, 930 F.3d 1225, 1232 (11th Cir. 2019) ("Indeed, standing is a threshold question that must be explored at the outset of any case."). In the absence of standing, "a court is not free to opine in an advisory capacity about the merits of a plaintiff's claim." *Corbett*, 930 F.3d at 1232 (citation omitted).

"[F]or a plaintiff to have standing, it must have '(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'" *Tsao v. Captiva MVP Rest. Partners, LLC*, 986 F.3d 1332, 1337 (11th Cir. 2021) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 333 (2016)). Challenges to a party's standing are properly raised under Rule 12(b)(1). Where Article III standing is lacking, a complaint shall be dismissed under Rule 12(b)(1) for a lack of subject matter jurisdiction. *See Elend v. Basham*, 471 F.3d 1199, 1205, 1208 (11th Cir. 2006).

B.  Motion to Dismiss

To adequately plead a claim for relief, Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Under Rule 12(b)(6), a motion to dismiss should be granted only if the plaintiff is unable to articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (abrogating *Conley*, 355 U.S. at 41). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). The allegations of the claim must be taken as true and must be read to include any theory on which the plaintiff may recover. *See Linder v. Portocarrero*, 963 F. 2d 332, 334–36 (11th Cir. 1992) (citing *Robertson v. Johnston*, 376 F. 2d 43 (5th Cir. 1967)).

Nevertheless, the Court need not take allegations as true if they are merely "threadbare recitals of a cause of *action's* elements, supported by mere conclusory statements . . ." *Iqbal*, 556 U.S. at 663.  In sum, "a district court weighing a motion to dismiss asks 'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *Twombly*, 550 U.S. at n. 8 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds*, *Davis v. Scherer*, 468 U.S. 183 (1984)).

### III.    DISCUSSION

Defendants move to dismiss the FAC [DE 23] on three independent grounds: (1) lack of standing for failure to allege that Plaintiffs have suffered any injury in fact; (2) the FDUPTA allegations fall under the safe harbor provision of Fla. Stat. § 501.212(1) because the conduct about which they complain has been approved by federal and state law; and (3) the FAC fails to allege minimal facts sufficient to support the conclusory allegations about the Product and the factual allegations undermine the conclusory allegations.

As explained below, the Court agrees with Defendants that Plaintiffs have failed to establish Article III standing to proceed under FDUTPA. The Court accordingly declines to rule on the remainder of Defendants' independent arguments in support of dismissal. *See Corbett*, 930 F.3d at 1232 (In the absence of standing, "a court is not free to opine in an advisory capacity about the merits of a plaintiff's claim."); *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 985

(11th Cir. 2005) (After affirming the district court's ruling that that the plaintiff lacked constitutional standing, the Eleventh Circuit declined to consider the merits of the district court's summary judgment ruling, concluding: "Therefore, we have no jurisdiction, nor did the district court, to examine the merits of his claims.").

### A. Article III Standing for Monetary Damages

First, Defendants argue that Plaintiffs lack standing because they have not suffered any injury in fact. Defendants maintain that, even if Plaintiffs had alleged a misrepresentation in the Product's label, any resultant economic harm is mooted by the Product's unconditional money-back guarantee that Plaintiffs could have—but have not—taken advantage of.

The Product offers "The ORTHO Guarantee: If for any reason you, the consumer, are not satisfied with this product, mail us your original proof of purchase to obtain a full refund of your purchase price." *See* FAC at ¶ 46 (Product's rear label).

After considering the case law and arguments by both sides, this Court agrees with the cases in this District that hold a product's offer of a money-back guarantee moots a plaintiff's economic injury claim under FDUTPA and therefore the plaintiff lacks Article III standing. *See Valiente v. Publix Super Markets, Inc.*, No. 22-22930-CIV, 2023 WL 3620538, at *3 (S.D. Fla. May 24, 2023); *Hardy v. Bed Bath & Beyond, Inc.*, No. 17-22315-CIV, 2018 WL 1272687, at *2 (S.D. Fla. Mar. 9, 2018); *Fields v. Walmart Inc.*, No. 8:23-CV-2057-TPB-UAM, 2024 WL 1984586 (M.D. Fla. Apr. 8, 2024).[1] In *Valiente*, the plaintiff brought a FDUTPA suit against

---

[1] Plaintiffs contend that the Court should reject the line of cases in this District that dismiss FDUTPA claims for lack of Article III standing on the grounds that a product's offer of a money-back guarantee moots a plaintiff's economic injury claim under FDUTPA. In support, Plaintiffs cite exclusively to district court cases outside the Eleventh Circuit. *See Gamino v. Thinx Inc.,* No. EDCV 23-2067 JGB (SHKX), 2024 WL 2429307, at *6 (C.D. Cal. Apr. 18, 2024) (rejecting argument that plaintiff lacked Article III standing to bring her false advertising claims because she did not take advantage of defendant's money-back guarantee and therefore has no injury in fact: "Courts in this

Publix over Publix-branded cough drops that stated "honey-lemon" on the packaging but contained no lemon in the ingredient list. *Valiente*, 2023 WL 3620538 at *1. The plaintiff sought both damages and injunctive relief, alleging that he would not have bought the cough drops if he knew they lacked lemon. *Id.* Publix moved to dismiss for lack of Article III standing in light of the company's money-back guarantee, which was printed on the back of the package, stating: "PUBLIX GUARANTEE: COMPLETE SATISFACTION OR YOUR MONEY BACK." *Id.* at *3. The district court granted the defendant's motion to dismiss for lack of Article III standing, ruling that because Publix offers customers a full refund for items with which they're unsatisfied, no questions asked, the only economic injury plaintiff alleges has been essentially mooted by Publix's money-back guarantee. *See id.* Similarly, in *Hardy v. Bed Bath & Beyond, Inc.*, No. 17-22315-CIV, 2018 WL 1272687, at *2 (S.D. Fla. Mar. 9, 2018), the district court dismissed a FDUTPA class action complaint regarding alleged misrepresentation in the percent cotton of pillowcases for lack of Article III standing where defendant's return instructions, included with the billing documentation attached to Complaint, stated defendant "gladly accept[s] returns or exchanges at any of [its] stores or by mail."). The district court explained in *Hardy:*

> Because, according to her complaint, Hardy could have received a full refund, the only injury she actually alleges was essentially mooted. *See Hamilton v. Gen. Mills, Inc.*, No. 6:16-CV-382-MC, 2016 WL 4060310, at *5 (D. Or. July 27, 2016) (finding plaintiff's injury mooted by the company's refund offer); *Johnson v. Bobcat Co.*, 175 F. Supp. 3d 1130, 1137 (D. Minn. 2016) (noting cases that stand for the general proposition: "when a defendant offers a plaintiff a full refund for all of its alleged loss prior to the

---

district [C.D. Cal.] regularly reject this argument as it 'conflates injury with remedy.'"); *Vitello v. Natrol, LLC*, No. 4:18 CV 915 RWS, 2018 WL 6304900, at *3 (E.D. Mo. Dec. 3, 2018) (rejecting defendant's argument that a plaintiff received the full benefit of the bargain of her purchase of a product because it included a money back guarantee); *Korolshteyn v. Costco Wholesale Corp.,* No. 3:15-CV-709-CAB-RBB, 2017 WL 1020391, at *8 (S.D. Cal. Mar. 16, 2017) (Rule 23 analysis rejecting defendant's argument "that a class action is not superior because Costco offers refunds without a receipt and that it would be easier to simply allow dissatisfied class members to obtain refunds from Costco").

commencement of litigation, this refund offer deprives the plaintiff of Article III standing because the plaintiff cannot establish an injury in fact").

*Hardy*, 2018 WL 1272687, at *2. And in a recent decision in *Fields v. Walmart Inc.*, No. 8:23-CV-2057-TPB-UAM, 2024 WL 1984586 (M.D. Fla. Apr. 8, 2024), the Court found that it lacked subject matter jurisdiction over a plaintiff's putative class action FDUTPA claim because the plaintiff failed to plausibly allege Article III standing due to the money-back guarantee offered on the back of the packaging of the fruit cups alleged to have misleading representations. *See id.* at *2 ("Defendant argues that Plaintiff fails to demonstrate an injury in fact because she has not and cannot allege that she suffered an actual economic injury in light of Defendant's unconditional money-back guarantee. The Court agrees.").

Plaintiffs attempt to avoid the Product's money-back guarantee by pointing to the allegations in the FAC citing pre-suit demand letters to Scotts sent by counsel for Plaintiff Perez. *See* FAC at ¶¶ 89–95. Plaintiffs allege that because Scotts did not acquiesce to the demand letters, which included a copy of Plaintiff Perez's receipt, the money-back guarantee was not real or unconditional because Scotts allegedly refused to honor this guarantee in response to the demand letter and therefore the guarantee is illusory.[2] *See id.* ¶¶ 91, 93.  The Court rejects Plaintiffs' argument regarding the demand letters. The demand letters did not merely seek a refund of their purchase price—indeed, Plaintiffs demanded nothing less than (1) a change in the Product's advertising; (2) national "corrective" advertising by Scotts; (3) restitution to all purchasers of the Product in the last four years; and (4) attorney's fees for Plaintiffs' counsel. This is entirely different than seeking a refund of Plaintiffs' purchase price. None of the demand

---

[2] As Defendants correctly note, this theory cannot apply to Plaintiff Gregorio because he never sent a demand letter.

8

letters seeks the "full refund of your purchase price," as offered by the Product. Thus, notwithstanding the demand letters, Plaintiffs fail to allege that they tried to take advantage of the Product's money-back guarantee and that their effort was denied.

Plaintiffs also argue that because a refund of the consumer's purchase price is contingent upon the customer mailing in their original proof of purchase, there is no money back guarantee. Plaintiffs contend that this is a conditional guarantee and thus this case is different from *Valiente, Hardy,* and *Fields*. The Court disagrees. Both *Hardy* and *Fields* reject Plaintiffs' argument that the Product's money-back guarantee is not unconditional because customers must mail their proof of purchase to obtain the refund. Under the guarantee in *Hardy*, a customer needed to return the product in a store or by mail and indicate a reason for the return. *See* 2018 WL 1272687, at *2. In finding Article III standing to proceed under FDUTPA lacking, the court did not find that those steps were restrictions on the return in such a way to render money back guarantee conditional. *See id.* Similarly, the guarantee in *Fields* required customers to return the product's packaging to get the refund. *See Fields*, 23-cv-2057, Am. Compl. [DE 18] at ¶ 23 (M.D. Fla. Feb. 2, 2024) (image of back of product label with language "Return the package for replacement or money back."). Thus, as *Hardy* and *Fields* illustrate, the Product's single logistical step to obtaining a refund does not render the Product's money-back guarantee "conditional" and take it outside of the line of cases in this District for lack of standing.

Accordingly, the Court concludes that Plaintiffs' FDUTPA economic injury claims are mooted by the Product's unconditional money-back guarantee and therefore Plaintiffs lack

9

Article III standing for monetary relief. *See Valiente*, 2023 WL 3620538; *Hardy*, 2018 WL 1272687; *Fields*, 2024 WL 1984586.

### B. Article III Standing for Injunctive Relief

Next, Defendants argue that, because the only harm Plaintiffs allege is economic, and that economic harm is mooted by the money-back guarantee, *see supra,* Plaintiffs are not "aggrieved" in any way, disentitling them to injunctive relief. *See Valiente*, 2023 WL 3620538, at *6 (concluding plaintiff could not be "aggrieved" for purposes of injunctive relief because the product's money-back guarantee mooted any economic injury). Defendants also argue that, because Plaintiffs now know of the purportedly deceptive Product labeling, they will not be harmed by the Product's labeling in the future, making injunctive relief inappropriate. *See, e.g., Ramirez v. Kraft Heinz Foods Co.*, 684 F. Supp. 3d 1253, 1260 (S.D. Fla. 2023) (holding no Article III standing for injunctive relief in FDUTPA claim because no real and immediate threat of future injury since plaintiff cannot be deceived by the product's labeling in the future).

Plaintiffs, on the other hand, argue that they are "aggrieved" parties entitled to injunctive relief under FDUTPA and they satisfy Article III standing for injunctive relief under FDUTPA because Plaintiffs allege a real and immediate threat of future harm, namely that Plaintiffs could purchase the Product again, mistakenly believing the deceptive statements about the Product had been corrected. *See* FAC at ¶ 82 ("Because Defendants continue to advertise, market, and sell the deceptively labeled Product, there is a risk that Plaintiffs and other Class members could purchase the Product again, mistakenly believing the deceptive Product labeling had been corrected."). Plaintiffs rely on *Jackson v. Anheuser-Busch InBev SA/NV, LLC*, 2021 WL

3666312, at *13–14 (S.D. Fla. Aug. 18, 2021) (plaintiffs sufficiently alleged threat of future injury for Article III standing to seek injunctive relief in FDUTPA claim related to statements made on a beer bottle's label because plaintiffs alleged that plaintiffs would "resume purchasing [the product] in the future if he learns that it is accurately labeled") and *Wasser v. All Mkt., Inc.*, No. 16-21238-CIV, 2017 WL 11139701, at *6 (S.D. Fla. Nov. 13, 2017) (holding plaintiffs sufficiently alleged basis to seek injunctive relief because "Plaintiffs allege that they purchased Vita Coco in reliance on the representation that Vita Coco is sourced and manufactured in Brazil, and that they would purchase Vita Coco again once it is properly labeled and marketed.").

Plaintiffs' theory that they satisfy Article III standing for injunctive relief under FDUTPA because they allege a real and immediate threat of future harm -- that they might buy the Product again -- has been roundly rejected as insufficient for injunctive standing. As explained earlier this year in a Middle District of Florida opinion:

> Volinsky lacks standing to seek injunctive relief. "[A] person exposed to a risk of future harm may pursue forward-looking, injunctive relief to prevent the harm from occurring, at least so long as the risk of harm is sufficiently imminent and substantial." *TransUnion*, 594 U.S. at 435. Volinsky's alleged injury is far from "certainly impending." *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 402 (2013) (quotations omitted). It beggars belief—knowing what he claims to about the 14w's alleged deficiencies—that Volinsky is in immediate danger of purchasing another laptop of the same model from the same manufacturer. The amended complaint's boilerplate assertion that Volinsky "intends to, seeks to, and will purchase the [14w] again when he can do so with the assurance [that Lenovo's] representations are consistent with the [14w's] abilities, attributes, and/or composition," Am. Compl. ¶ 48, cannot show a "certainly impending" injury both under the circumstances alleged in the complaint and as a matter of simple common sense, *Clapper*, 568 U.S. at 402.

*Volinsky v. Lenovo (United States) Inc.*, No. 8:23-CV-00250-KKM-NHA, 2024 WL 1299315, at *4 (M.D. Fla. Mar. 27, 2024). *See also Yonan v. Walmart, Inc.*, 591 F. Supp. 3d 1291, 1305 (S.D. Fla. 2022) ("Plaintiffs allege that they 'have no way of knowing if or when Nestlé makes

11

changes to the Product and whether the Product's labeling remains deceptive,' suggesting that future injury is possible. SAC ¶ 54. The Court finds this allegation far too speculative to merit injunctive or declaratory relief.4 Thus, the requests for injunctive and declaratory relief are due to be dismissed."); *Sabater v. Am. Journey (PET), LLC*, 570 F. Supp. 3d 1160, 1164–65 (S.D. Fla. 2021) ("Here, the Court does not see how Plaintiff can maintain his theory of the case—that he would not have purchased the Grain-Free Products[,] . . . while also maintaining that he will purchase the products again in the future if they are correctly labeled."); *Potter v. Potnetwork Holdings, Inc.*, 2020 WL 1516518, at *3 (S.D. Fla. Mar. 30, 2020) (finding no standing for injunctive relief despite plaintiff's allegation that "if Plaintiff could rely upon the truthfulness of Defendants' labeling, she would continue to purchase Defendants' products in the future"); *Snyder v. Green Rds. of Fla. LLC,* 430 F. Supp. 3d 1297, 1304 (S.D. Fla. 2020) (same). Even one of the cases relied on by Plaintiffs, *Wasser v. All Mkt., Inc.*, reflects Plaintiffs' lack of standing for injunctive relief, as the district court later held in that case that the plaintiffs' allegations regarding potential future purchases were insufficient to establish likelihood of future harm. *See* 329 F.R.D. 464, 471 (S.D. Fla. 2018) (finding the allegation that "Plaintiffs would purchase [the product] if and when it is properly labeled" insufficient for injunctive standing where face of complaint reveals that plaintiffs will not be deceived by the alleged deceptive label in the future, as they now actually know the truth underlying that labeling).

Accordingly, the Court concludes that Plaintiffs fail to allege a real and immediate threat of future harm and therefore Plaintiffs lack Article III standing for injunctive relief under FDUTPA. Therefore, the Court will not proceed to analyze the merits of Plaintiffs' claims. *See Corbett*, 930 F.3d at 1232; *Bochese*, 405 F.3d at 985.

## IV. CONCLUSION

Based upon the foregoing, it is **ORDERED AND ADJUDGED** as follows:

1. Defendants' Motion to Dismiss First Amended Class Action Complaint [DE 29] is **GRANTED in part**[3];

2. The First Amended Complaint [DE 23] is **DISMISSED** for lack of Article III standing. Because a dismissal for lack of subject matter jurisdiction is not a judgment on the merits, the Court dismisses the First Amended Class Action Complaint "without prejudice." *See Koonce-Hope v. Bass*, No. 22-11706, 2023 WL 2417638, at *2 (11th Cir. Mar. 9, 2023) ("When a district court dismisses a case for lack of jurisdiction … the dismissal must be entered without prejudice.").

3. Finally, the Court dismisses the First Amended Class Action Complaint without leave to amend.[4]

4. The Clerk shall **CLOSE** this case and **DENY AS MOOT** any pending motions.

---

[3] While this Order does not rule on the remainder of Defendants' independent arguments in support of dismissal, the Court notes that dismissal of this action is alternatively required because Plaintiffs' FDUPTA allegations fall under the safe harbor provision of Fla. Stat. § 501.212(1). The Product's label is "specifically permitted" by federal and state law, and therefore Plaintiffs' FDUTPA claims are incognizable, because the Product's label was specifically approved by the U.S. Environmental Protection Agency ("EPA") and Florida Department of Agriculture & Consumer Services ("FDACS").

[4] Based on the rulings *supra,* amendment would be futile. Additionally, Plaintiffs' request in their Response to the Motion to Dismiss that if the Court grants the Motion, Plaintiffs be given a second opportunity to amend their complaint, *see* [DE 33] at p. 26, is both procedurally defective and lacking in substantive support. *See Newton v. Florida*, 895 F.3d 1270, 1277–78 (11th Cir. 2018) (reaffirming the rule that a request for leave to amend is not properly raised if embedded in a memorandum in opposition to a motion to dismiss); *see also Avena v. Imperial Salon & Spa, Inc.*, 740 F. App'x 679, 683 (11th Cir. 2018) ("[W]e've rejected the idea that a party can await a ruling on a motion to dismiss before filing a motion for leave to amend.").

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 14th day of November, 2024.

*/s/ William P. Dimitrouleas*
WILLIAM P. DIMITROULEAS
United States District Judge

Copies furnished to:
Counsel of Record